UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL L. BLACK,<br><br>      Petitioner,<br><br>    v.<br><br>DAVID ORTIZ,<br><br>      Respondent. | No. 18-cv-11823(NLH)<br><br>OPINION |

APPEARANCES:

Paul L. Black
17447-050
Federal Correctional Institution
Fort Dix N.J. Unit 5802
P.O. Box 2000, Fort Dix, N.J. 08640

    *Petitioner, Pro se*

Craig Carpenito, United States Attorney
Jessica R. O'Neill, Assistant United States Attorney[1]
Elizabeth A. Pascal, Assistant United States Attorney[2]
Office of the U.S. Attorney
District of New Jersey
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101

    *Attorneys for Respondent*

HILLMAN, District Judge

    Petitioner Paul L. Black, a federal prisoner at FCI Fort Dix, petitions for a writ of habeas corpus under 28 U.S.C. §

---

[1] On the brief.

[2] Substituted as counsel on October 28, 2020. ECF No. 8.

1

2241, challenging a disciplinary hearing which resulted in the loss of forty days of good conduct credit.  ECF No. 1.  Respondent David Ortiz, the Fort Dix Warden, opposes the Petition.  ECF No. 7.  For the reasons stated herein, the Petition will be denied.

I.   BACKGROUND

After Petitioner's conviction for aiding and abetting possession of counterfeit access devices and device-making equipment and aiding and abetting in relation to false identification documents, the United Stated District Court for the Northern District of Georgia sentenced Petitioner to a 180-month imprisonment term with 3 years of supervised release to follow.  Declaration of FCI Fort Dix Legal Assistant Tara Moran, ECF No. 7-1, Exh. 1.  At the time this petition was filed, Petitioner's projected release date was February 7, 2025.  Id.

According to an initial incident report, on August 21, 2017, at approximately 5:55 p.m., FCI Fort Dix Correctional Officer J. Johnson entered room 320 in unit 5802 to conduct a "shakedown."  ECF No. 7-1, Exh. 3 (the "First Report"), p. 16, ¶ 11.  Before announcing his presence, Officer Johnson observed Petitioner "interacting with his locker."  During his search of Petitioner's locker, Officer Johnson found a white LG smartphone.  Id.  Petitioner was charged with the prohibited act of Possession of a Hazardous Tool, code 108.  Id. at ¶ 10.  The

First Report was prepared on August 21, 2017 at 8:48 p.m. and delivered on August 22, 2017 at 2:30 p.m.  Id. at ¶¶ 13, 15-16.

The next day, on August 23, 2017 at 6:55 a.m., the investigating lieutenant suspended the First Report for a "pending rewrite" of the incident description.  ECF No. 7-1, Exh. 4, p. 19.  Johnson submitted a re-written incident report at 11:23 a.m., delivered to Petitioner about two hours later.  ECF No. 7-1, Exh. 5, p. 22 (the "Second Report").

The Second Report differed in several respects: it did not mention a shakedown, instead asserting that Officer Johnson was "conducting security rounds"; it alleged that Johnson observed Petitioner "in front of his assigned opened wall locker handling things inside of it"; and it alleged that Petitioner rejected orders to secure his wall locker and submit to a pat search. Id.

Two days later, on August 25, 2017, the Unit Disciplinary Committee (UDC) referred the matter to a Discipline Hearing Officer (DHO).  ECF No. 7-1, pp. 23-28.  Petitioner acknowledged his rights, including the right of administrative appeal to the Regional Director within twenty calendar days of notice of the DHO's decision.  Id.

The DHO held a hearing on November 16, 2017, and issued a report on November 18, 2017.  ECF No. 7-1, Exh. 8, pp. 30-34 (the "DHO Report").  According to the DHO Report, Petitioner

3

"raised no issues about the disciplinary process." Id. ¶ III(B). The DHO Report also summarized Petitioner's statement regarding the incident: that he did not see a cell phone in his locker, and has never put a cell phone in his locker; that he does not have any problems with anyone and is not aware of anyone who would put a phone in his locker; that he does not lock his locker because other inmates would perceive him negatively; that no other inmates in the room lock their lockers; and that he has had issues with other people accessing his locker. Id.

Petitioner exercised his right to have a witness present: fellow inmate Stephen Michael St. Hilaire. Id. at ¶ III(C)(2). St. Hilaire, who was not present during the search, stated that Petitioner's friends frequently accessed Petitioner's locker. St. Hilaire also stated that he locks his own locker. Id.

The DHO considered the Second Report, the statements at the hearing, a chain of custody log for the cell phone, and a photo of the cell phone. Id. at ¶ V. The DHO determined that Petitioner alone was responsible for keeping his assigned area free of contraband. Id. The DHO did "not find it plausible that someone else placed the cellular phone in [Petitioner's] locker," noting that Petitioner did not present any evidence of prior conflict with staff or inmates. Id. The DHO also noted Petitioner did not make any statement or introduce exculpatory

4

evidence prior to the hearing, drawing an adverse inference against Petitioner on that basis.  Id.  The DHO found Petitioner's contention that no one locked their lockers was undermined by St. Hilare's statement that he locked his own locker.  Id.

The DHO ultimately found that Petitioner committed the alleged violation.  Id.  Characterizing cell phones as hazardous because they undermine institutional security and threaten the safety and security of staff, inmates, and the public, the DHO assessed a forty-day disallowance of good conduct time and a 180-day loss of phone, email, commissary, and visiting privileges.  Id. at ¶¶ VI-VII.  The DHO advised Petitioner of his right to appeal within twenty calendar days under the Administrative Remedy Procedure.  Id.  at ¶¶ VIII.

Petitioner received the DHO Report on November 19, 2017. Id. at ¶ IX.  Petitioner's appeal to the Administrative Remedy Coordinator Northeast Regional Office, dated November 30, 2017, alleged that the DHO did not mention or consider the differences between the First and Second Reports, or an alleged statement that Officer Johnson made to Petitioner that Johnson did not re-write the First Report.  Stated differently, that Johnson's statement inferred that the Second Report was re-written by someone other than Johnson.  Pet'n, ECF No. 1-2, p. 4 (the "Regional Appeal").  On December 20, 2017, the Regional

5

Director's Office rejected Petitioner's appeal, received on December 18, 2017, as untimely, having arrived after the December 9, 2017 deadline.  ECF No. 7-1, Exh. 2, p. 13.  The rejection instructed Petitioner to provide staff verification stating that the untimeliness was not Petitioner's fault and resubmit an appeal within ten days.  Id.

Petitioner immediately submitted a second appeal dated January 15, 2018 to the Administrative Remedy Coordinator Central Office/General Counsel on January 30, 2018.  ECF Doc No. 1-2, p. 2 (the "Central Office Appeal").  The Central Office Appeal asserted that the Regional Appeal was mailed on November 30, 2017 but took 17 days to arrive, and that any delay was therefore attributable to mail delays outside of Petitioner's control.  Id.  The Central Office Appeal also acknowledged that "Unit Team staff have directed [Petitioner] to the mail room," but concluded that "it is doubtful to retrieve a verification from staff related to this issue" without detailing any efforts to obtain a verification.  Id.  The Central Office rejected the appeal, concurring with the Regional Office determination and instructing that Petitioner should "resubmit to the level of the original rejection" and "provide a memo stating late filing was not [Petitioner's] fault."  Id. at p. 1.

This Petition followed.

II. ANALYSIS

Petitioner makes four arguments: "Due process, deliberate fabrication, intent, and insufficiency of evidence." ECF No. 1, p. 6, ¶ 13. In sum and substance, Petitioner argues any filing delay was caused by mail delays typical of the holiday season and Fort Dix staff and equipment shortages outside of his control, that the First and Second Report materially differed, and that the record was not sufficient to connect Petitioner to the cell phone in his locker. Respondent answers that Petitioner has not exhausted his administrative remedies, that Petitioner was afforded due process throughout the disciplinary process, and that the DHO Report met the evidentiary standard required to find that Petitioner committed the prohibited act alleged.

   A.   Exhaustion of administrative remedies

"Although there is no statutory exhaustion requirement attached to § 2241," the Third Circuit has "consistently applied an exhaustion requirement to claims brought under § 2241." Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required because: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing

agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996).  Failure to exhaust these remedies "generally bars review of a federal habeas corpus petition absent a showing of cause and prejudice[.]"  Id. at 761.

The BOP's administrative remedy system has three tiers allowing "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."  28 C.F.R. § 542.10(a).  An appeal of a DHO decision "shall be submitted initially to the Regional Director for the region where the inmate is currently located."  28 C.F.R. § 542.14(d)(2).  "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response."  28 C.F.R. § 542.15(a).  "Appeal to the General Counsel is the final administrative appeal."  Id.

As relevant here, the regulations also provide for a filing extension "[w]here the inmate demonstrates a valid reason for delay," defined generally as "a situation which prevented the inmate from submitting the request within the established time frame," including "an extended period of time during which the inmate was physically incapable of preparing a Request or

8

Appeal." 28 CFR § 542.14(b). "When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection[.]" 28 CFR § 542.17(c). The appeal may then be affirmed, or it may be directed that the appeal be accepted at the lower level. 28 CFR § 542.17(c).

Here, there is no dispute that Petitioner submitted the Regional Appeal after the DHO Report, and that the Regional Office denied the appeal as untimely with instructions to resubmit it within ten days, accompanied (per the regulations) by staff verification of the reason for untimely filing. ECF No. 1-2, p. 12.

But Petitioner did not re-file at that level; instead, Petitioner immediately filed the Central Office Appeal, which first made the argument reiterated here: that mail delays outside of Petitioner's control caused the untimely filing. Id. That appeal, however, acknowledges that "Unit Team staff . . . directed [Petitioner] to the mail room," but expressed that "it is doubtful to retrieve a verification from staff[.]" Id. Nonetheless, it is undisputed that the Central Office concurred with the prior determination and instructed Petitioner to resubmit an appeal to the Regional Director with a verification, and that Petitioner instead filed this Petition. ECF No. 1-2, p. 1.

9

The Court interprets Petitioner's argument here as stating that attempted exhaustion of administrative remedies would have been futile. However, "[e]xhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates that he will be unsuccessful in his administrative appeals[.]" Malvestuto v. Martinez, No. 09-1339, 2009 WL 2876883, at *3 (M.D. Pa. Sept. 1, 2009); see also Levon v. Zickefoose, 2010 WL 3025135, *4 (D.N.J. July 30, 2010) (rejecting futility argument based on the inmate's presumption that his administrative grievance would be denied and concluding that a full administrative record was necessary for the Court to determine whether the RRC placement decision had been made in accordance with the law); cf. Brown v. Drew, 452 F. Appx. 906, 908 (11th Cir. 2012) (excusing the petitioner from exhaustion requirements where "nothing in the record established that [petitioner] was aware or could readily become aware of his right to request an extension of time to resubmit his appeal."); Harrell v. New Jersey, No. 08-2225, 2008 WL 2522309, at *5 (D.N.J. June 20, 2008) (holding that a sexually violent predator could establish exhaustion of remedies by "showing that he raised the same challenges to all levels of the New Jersey courts when he appealed his prior order of civil commitment, and those current challenges and the exhausted challenges involve materially identical facts and legal issues.").

Underscoring the importance of a complete administrative record is the Central Office Appeal's omission of new arguments made here: staff shortages and indifference and unavailability of a copier.  Compare ECF No. 1-1, p. 12 with ECF No. 1-2, p. 2.  Indeed, at least one argument made here contradicts the Central Office Appeal by averring that Petitioner *did*, in fact, request verification.  ECF No. 1-1, p. 12.  Accordingly, Petitioner has failed to exhaust his administrative remedies.  Even if he had exhausted all remedies, however, the Petition would nevertheless be denied on the merits for the reasons discussed below.

    B.    Due process

Petitioner asserts violations of his due process rights; specifically, Petitioner challenges Respondent's failure to serve the First Report upon Petitioner within twenty-four hours of the incident, asserts that the DHO failed to consider material differences between the First and Second Reports, and challenges the DHO Report's findings as unsupported by the record.  Respondent replies that Petitioner was afforded all required due process protections and was not prejudiced by the delivery or content of the Reports.

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments prohibiting deprivation of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556

11

(1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed . . . .  In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two general categories: the Due Process Clause itself or from state or other federal law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction, "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated."  Wolff, 418 U.S. at 557.  "Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct."  Denny v. Schultz, 708 F.3d 140, 143-44 (3d

Cir. 2013). Thus, good conduct credit may only be taken from an inmate if due process protections are observed.

In assessing whether disciplinary proceedings complied with the Due Process Clause, the Court considers the factors enumerated in Wolff v. McDonnell, 418 U.S. 563-69: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Moreover, due process requires that disciplinary findings are supported by "some evidence in the record." Ancrum v. Holt, 506 F. App'x 95, 96 (3d Cir. 2012) (citing Wolff, 418 U.S. at 557, Superintendent v. Hill, 472 U.S. 445, 454 (1985)).

Utilizing those standards, the record supports Respondent's compliance with the regulations and adherence to Petitioner's due process rights. First, the Court finds unavailing Petitioner's argument that Respondent should have delivered the First Report to Petitioner within twenty-four hours of the search. Petitioner received notice of the charges against him well in advance of the hearing and time period set forth in the regulations. ECF No. 1-1, p. 6, et seq.

Once a matter is referred to a DHO, Petitioner is entitled to receive written notice of charges at least twenty-four hours

13

before the hearing and to present witnesses and evidence. 28 CFR § 541.8(c), (f). Petitioner acknowledges receipt of the Second Report on August 23, 2017 at 1:12 p.m., as reflected in both the Second Report itself and the DHO Report, well over twenty-four hours before the hearing on November 16, 2017, and well after the UDC advised Petitioner on August 25, 2017 that the charge would be referred for a DHO hearing. ECF No. 1-1, p. 6; ECF No. 7-1 at p. 22, ¶ 16, p. 30, ¶ I(A),(B).

Petitioner seeks to enforce 28 C.F.R. § 541.5, which provides that:

> The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will <u>ordinarily</u> receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.

<u>Id</u>. (emphasis added.)

However, the regulation is not rigid. "Inclusion of 'ordinarily' as a modifier for 'provided within 24 hours' provides a flexibility that is essential in the prison context, where investigation of suspicious activity may be required to define the scope of the activity and to identify all participants." <u>Hughes v. Quintana</u>, 11-06389, 2013 WL 5350668, at *2 (C.D. Cal. Sept. 23, 2013) (citing <u>Branch v. Thomas</u>, 2012 WL 5830396, *4 (D. Or. Nov. 15, 2012)); <u>see also</u> <u>Scott v.</u>

14

Wilson, No. 16-804, 2018 WL 1144586, at *6 (E.D. Va. Mar. 2, 2018) (regulation requiring that "ordinarily" the payment for non-UNICOR inmates is $25.00 per quarter, … does not limit the BOP's authority but rather grants it discretion to set a higher IFRP amount."); Tex. Trailer Corp. v. Nat'l Union Fire Ins. Co., No. 15-2453-B, 2016 WL 1047088, at *3 (N.D. Tex. Mar. 16, 2016) ("The modifier 'ordinarily' leaves room, of course, for situations in which other evidence might be relevant to determining a duty to defend."). Read together with regulations governing DHO hearing time periods, the regulations are clearly intended to (and did here) provide Petitioner with adequate time to prepare a defense.

Even if Respondent had violated BOP regulations, Petitioner has nevertheless failed to demonstrate prejudice because the record supports the DHO Report's substantive findings. See Obiegbu v. Werlinger, 488 F. App'x 585, 586 (3d Cir. 2012) (affirming denial of habeas petition where, even if regulation requiring initial hearing before UDC was violated, petitioner failed to demonstrate prejudice). In reviewing a disciplinary proceeding, the Court's function is not to decide whether it would have reached the same decision, but to consider "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455–56); see also Denny, 708 F.3d at 145 ("[A] reviewing

15

court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause.").

This review is minimal, and "[a] challenge to the weight accorded evidence is not relevant to the question of whether the decision was supported by 'some evidence' because the standard does not require 'weighing of the evidence.'" McCarthy v. Warden Lewisburg USP, 631 F. App'x 84, 86-87 (3d Cir. 2015) (quoting Hill, 472 U.S. at 455). "Once the reviewing court determines that there is some evidence in the record to support the finding of the hearing officer, an inmate's challenge to the weighing of the evidence must be rejected." Cardona v. Lewisburg, 551 F. App'x 633, 637 (3d Cir. 2014).

"The Bureau of Prisons requires inmates to keep their areas free of contraband." Cooper v. Zickefoose, No. 11-1272 (NLH), 2013 WL 875959, at *5 (D.N.J. Mar. 7, 2013) (citing Bureau of Prisons Program Statement 5270.09 (Inmate Discipline Program), Appendix C (Inmate Rights and Responsibilities)). To sustain charges, the regulations permit the DHO to "call witnesses who have information directly relevant to the charge(s) and who are reasonably available", but permit the DHO not to call adverse witnesses "…if their testimony is adequately summarized in the incident report or other investigation materials." 28 CFR § 541.8(f)(2). The DHO's decision "will be based on at least some

16

facts and, if there is conflicting evidence, on the greater weight of the evidence."  28 CFR § 541.8(f).

Here, as Respondent argues, the record reflects Officer Johnson found the cell phone in Petitioner's assigned locker and observed Petitioner at his locker shortly before the discovery. Despite Petitioner's contentions regarding discrepancies between the First and Second Reports, even the record outside the Second Report would have been sufficient.[3]  That is, the First Report indicated that Officer Johnson "witnessed [Petitioner] interacting with his locker," and later "search[ed Petitioner's] unsecured wall locker and discovered [the cell phone]."  ECF No. 1-2, p. 9.[4]  Likewise, the DHO Report questioned Petitioner's own statement that the occupants of his unit all left their lockers unlocked, relying upon the contradictory statement of Petitioner's witness that he locked his own locker, and noting that neither Petitioner nor his witness "presented any facts

---

[3] The record also contradicts Petitioner's assertion that the DHO failed to identify which incident report was considered; the DHO Report quotes from the Second Report, notes that the First Report was "sent back to the reporting staff member . . . for clarification," and confirms Petitioner's receipt.  ECF No. 7-1, p. 31, ¶ V.

[4] The discrepancies between the reports revolved primarily upon Officer Johnson's instructions to Petitioner and Petitioner's alleged noncompliance, which was not the subject of any subsequent allegation or adjudication.  ECF No. 1-2, p. 10.  The only significant addition was that Petitioner was "standing in front of his assigned opened wall locker handling things inside of it," a distinction without any substantive difference.  Id.

17

indication [Petitioner] could have been set up."  ECF No. 7-1, p. 31, § V.

Petitioner challenges the DHO's conclusion that the cell phone belonged to Petitioner without direct evidence in the First Report of Petitioner's physical possession of the phone. However, as Respondent argues, it is an inmate's responsibility to keep his or her areas free of contraband, and direct evidence of physical possession of contraband is not required to uphold a violation.  Donahue v. Grondolsky, 398 F. App'x 767, 772-73 (3d Cir. 2010) (rejecting petitioner's argument that he shared a cell with three other inmates that could have had access to his area where the contraband SIM card was taped to the back of his clothes drawer; see also  United States v. Iafelice, 978 F.2d 92, 97 (3d Cir. 1992) (finding that "the jury's inference that [defendant] had constructive possession of the heroin is supported by a logical and convincing connection between the facts established and the conclusion inferred" where defendant owned and operated the car in which the drugs were transported and defendant's phone was defendant's phone had contact with co-conspirators during the drug transaction); cf. Hamilton v. O'Leary, 976 F.2d 341, 343 (7th Cir. 1992) (finding that "some evidence" standard was not met where contraband weapons were found in vent which ran vertical length of eight cells, theoretically accessible from multiple floors).  As discussed

18

above, the record, even excluding the Second Report, contains sufficient circumstantial evidence to support the DHO's findings.

Finally, Petitioner also challenges the DHO's qualifications to conduct the disciplinary hearing, asserting that he filed a FOIA request in late 2017 for a copy of the DHO's certification. However, Petitioner's basis for the request appears to be founded upon Petitioner's dissatisfaction with the DHO's findings and willingness to credit Respondent's (in Petitioner's words) "drastically altered" Second Report. ECF No. 1-1, p. 11; ECF No. 1-2, p. 11. Despite over three years having elapsed since that request, Petitioner has not submitted any results, and thus there is nothing to examine. More importantly, given the Court's holding above regarding the sufficiency of the DHO's determination, the record does not support a challenge to the DHO's qualifications or findings.

III. CONCLUSION

For the reasons above, the petition for writ of habeas corpus will be denied.

An appropriate order follows.

Dated: _January 12, 2021_      ___s/ Noel L. Hillman_____
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.